**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CLEAR C2, INC.,<br><br>    *Plaintiff*,<br><br>    v.<br><br>VERIZON SOURCING LLC,<br><br>    *Defendant.* | CASE NO. 1:25-cv-05308-DEH |

**DEFENDANT VERIZON SOURCING LLC'S AMENDED ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Verizon Sourcing LLC ("Verizon") hereby submits the following Amended Answer to the First Amended Complaint filed by Plaintiff Clear C2, Inc. ("Plaintiff") pursuant to Federal Rule of Civil Procedure 15(a)(1).

1.      Verizon denies the allegations in Paragraph 1.

2.      Verizon is without knowledge or information sufficient to admit or deny the allegations in Paragraph 2.

3.      Verizon admits the allegations in Paragraph 3.

4.      Verizon admits the allegations in Paragraph 4.

5.      Verizon denies that venue is proper in the United States District Court for the Northern District of Texas, but admits that venue is proper in the United States District Court for the Southern District of New York.

6.      Verizon admits that Clear C2 and Verizon Services Corp. entered into the Master Services Agreement, number 710-30155-2007, dated March 15, 2007 (the "MSA"), pursuant to which Clear C2 was to provide Verizon Services Corp. certain Clear C2 products and related software licenses, maintenance, and services, including a content management system and servers.

- 1 -

Verizon admits that the Maintenance and Engineering Division of Verizon Wireless was located in Southlake, Texas.  Verizon is without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 6.

7.      Verizon admits that 5.1 of the MSA states "[s]upplier grants to Verizon, its Affiliates, and to its and their employees, agents and contractors, a non-exclusive, perpetual, irrevocable, enterprise wide, worldwide, fully paid-up, royalty-free license and right to use, at any Verizon or Affiliate location, the number of user licenses of the Software specified in an Order at the prices designated in Exhibit A."  Verizon denies the remaining allegations in Paragraph 7.

8.      Verizon admits that the July Purchase Order specifically referenced the MSA and that Section 4.4 of the MSA states "[u]nder special circumstances, Software or Related Services may also be purchased (or licensed as to Software) pursuant to the terms of this Agreement at prices quoted by Supplier in response to a specific written request from Verizon."  Verizon denies the remaining allegations in Paragraph 8.

9.      Verizon admits that servers for the Ops Tracker system were installed in Southlake, Texas.  Verizon denies the remaining allegations in Paragraph 9.

10.     Verizon admits that Ms. Quinn retired from Verizon in 2019.  Verizon is without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 10.

11.     Verizon admits that Tommy Elliott was a former Network System Director at a Verizon-affiliated entity, and that Chad Hensley was Mr. Elliott's manager.  Verizon is without knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 11.

12.     Verizon admits that in 2016, Clear C2 officials met at Verizon-affiliated Westlake, Texas facility with Abhitabh Kushwaha.  Verizon further admits that the Integrated Operations

Portal (IOP) was to be a "front-end" into other systems including the Ops Tracker system. Verizon denies the remaining allegations in Paragraph 12.

13.    Verizon is without knowledge or information to admit or deny the allegation that Verizon Services Corp. requested Clear C2 to present training and demonstrations to the users of the Ops Tracker system at the annual NSS Vendor and Technology Fair in June each year at the Embassy Suites in Grapevine, Texas.  Verizon denies the remaining allegations in Paragraph 13.

14.    Verizon admits that in April of 2022, Dhaval Thacker assumed the management of both IOP and Ops Tracker systems from Mr. Kushwaha, and that Mr. Thacker managed both the IOP and Ops Tracker systems for Verizon Services Corp. until the end of 2023.  Verizon further admits that Mr. Thacker met with Plaintiff in or around May 2023, but denies Plaintiff's characterization of that meeting.  Verizon denies the remaining allegations in Paragraph 14.

15.    Verizon admits that Verizon Services Corp. requested a review of the MSA and maintenance charges in or about December 2023.   Verizon admits that Velamur Srinivasan Sudharsan held a call on or about February 20, 2024 with Plaintiff, but denies Plaintiff's characterization of that call.  Verizon denies the remaining allegations in Paragraph 15.

16.    Verizon admits that it requested an amendment of the MSA in or about March of 2024.  Verizon denies the remaining allegations in Paragraph 16.

17.    Verizon denies the allegations in Paragraph 17.

18.    Verizon denies the allegations in Paragraph 18.

19.    Verizon admits that Mr. Selvam had a meeting with Plaintiff on or about April 23, 2024, but denies Plaintiff's characterization of that meeting.  Verizon further admits that it disputed Invoice #7998.  Verizon denies the remaining allegations in Paragraph 19.

20.    Verizon admits the allegations in Paragraph 20.

21.     Verizon admits the allegations in Paragraph 21.

22.     Verizon admits that it disputed Invoice #7998.  Verizon denies the remaining allegations in Paragraph 22.

23.     Verizon admits that Section 19.3.4 of the MSA states "Verizon shall inform all licensed users that the Software constitute confidential information of Supplier and that all intellectual property rights therein are the property of Supplier and Verizon shall take all such steps reasonably necessary to ensure compliance by its employees, agents, and sub-contractors with the provisions of this clause."  Verizon denies the remaining allegations in Paragraph 23.

24.     Verizon admits that it entered an agreement for Clear C2 to migrate certain business functions out of the Ops Tracker system.  Verizon further admits that on June 14, 2024, Mr. Selvam sent Clear C2 an email noting that he was "sending the revised scope of SOW expectations so we are aligned." Verizon denies the remaining allegations in Paragraph 24.

25.     Verizon denies the allegations in Paragraph 25.

26.     Verizon admits that Section 19.3.2.2 of the MSA states that "Verizon . . . shall not save, modify, merge or combine the whole or any part of the Software with any other software or documentation without the agreement of Supplier, except for the intended internal use."  Verizon admits that Section 19.3.2.1 of the MSA further states that "Verizon . . . shall not except for normal operating purposes or as provided in this Agreement, copy the whole or any part of the Software." Verizon denies the remaining allegations in Paragraph 26.

**COUNT ONE**

27.     Verizon incorporates its responses to all preceding allegations as if fully set forth herein.

28.     Verizon denies the allegations in Paragraph 28.

29.    Verizon admits that it refuses to pay the amounts demanded by Plaintiff.  Verizon denies the remaining allegations in Paragraph 29.

29.    Verizon admits that Section 19.3.2.2 of the MSA states that "Verizon . . . shall not save, modify, merge or combine the whole or any part of the Software with any other software or documentation without the agreement of Supplier, except for the intended internal use."  Verizon further admits that Section 19.3.2.1 of the MSA further states that "Verizon . . . except for normal operating purposes or as provided in this Agreement, copy the whole or any part of the Software."  Verizon denies the remaining allegations in Paragraph 29.  (Verizon notes that the First Amended Complaint mistakenly contains two "Paragraph 29s.").

30.    Verizon denies the allegations in Paragraph 30.

### ATTORNEYS' FEES

31.    Verizon incorporates its responses to all preceding allegations as if fully set forth herein.

32.    Verizon denies the allegations in Paragraph 32.

### CONDITIONS PRECEDENT

33.    Verizon denies the allegations in Paragraph 33.

### PRESERVATION OF EVIDENCE

34.    Paragraph 34 contains a preservation request.  That is not an allegation and thus no response is required.

### AFFIRMATIVE DEFENSES

Verizon asserts the following affirmative and other defenses without prejudice to its right to argue that Plaintiff bears the burden of proof regarding some or all of these defenses.  Verizon reserves the right to assert additional affirmative defenses upon further investigation and discovery into the matters alleged.

1. The First Amended Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, by waiver, as Plaintiff affirmatively represented to Verizon that it was not charging for licenses.

3. Plaintiff's claims are barred, in whole or in part, by its prior material breach of the MSA's Most Favored Customer clause.

4. Plaintiff's claims are barred, in whole or in part, because Verizon did not cause Plaintiff's damages.

5. Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its damages, as Plaintiff had access to the number of users at all relevant times.

6. Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

7. Plaintiff's claims are barred, in whole or in part, by the MSA's limitation of liability clause.

8. Plaintiff's claims are barred, in whole or in part, by modification of the MSA through the parties' course of conduct that ceased license reporting and charges.

Dated: April 2, 2026

Respectfully submitted,

*/s/ Jillian Leslie*

Serine Consolino
Jillian Leslie (admitted *pro hac vice*)
**AEGIS LAW GROUP LLP**
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel: (202) 737-3500
sconsolino@aegislawgroup.com
jleslie@aegislawgroup.com

*Counsel for Verizon Sourcing LLC*

- 6 -